THE ALLIANCE COOPERATIVE INSURANCE COMPANY
v. WILLIAM E. CORBETT.

No. 13,713.    (77 Pac. 108.)

SYLLABUS BY THE COURT.

1. FIRE INSURANCE — *Statement by Agent in the Application Held Binding on the Company.* A statement in a written application for insurance, subsequently approved, that it is for indemnity for a term of years from a date named, is a sufficient embodiment in the application of an agent's agreement that the insurance shall take effect on that day to satisfy a condition of the application that the company will not be bound by any representation, agreement or promise of the agent not contained in the application itself.

2. ———— *Instructions Held Sufficient.* Criticisms of an instruction to the jury held to be invalid.

3. ———— *Policy Not a Condition Precedent to Liability of Company.* In the absence of a controlling provision of its by-

laws, or an agreement of the parties to the contrary, a binding contract of insurance with a mutual fire-insurance company may be consummated without the issuance of a policy.

4. ———— *Amount of Attorney's Fees Not a Question for the Jury.*  Under section 3410 of the General Statutes of 1901, providing that in certain suits against insurance companies the court in rendering judgment shall allow the plaintiff a reasonable sum as an attorney's fee, to be recovered as a part of the costs; the amount of such award is not a question for the jury.

Error from Shawnee district court; Z. T. HAZEN, judge.  Opinion filed June 11, 1904.  Affirmed.

*Redden, McKeever & Gilluly*, for plaintiff in error.

*W. H. Holmes*, and *Garver & Larimer*, for defendant in error.

The opinion of the court was delivered by

BURCH, J. :  The defendant is a corporation organized on the mutual plan for the purpose of insuring its members against loss of property by fire.  Its by-laws provide for the appointment of agents, but state that no agent shall take any risk until he has given a bond and such bond has been approved.  The by-laws further provide that an agent shall act as surveyor of the company, and shall be authorized to receive money and notes as premiums and to receipt therefor, but that if applications be rejected at the office of the company he shall refund any commissions he may have retained.

Prior to June 3, 1901, E. A. Shankle was appointed an agent of the defendant.  He gave a bond, which was duly approved, and his authority to represent the company continued until after this loss.  On June 3, 1901, the agent, Shankle, took a written application of the plaintiff for insurance upon sundry articles of personal property in the aggregate sum of

$2750. The premium charged by the company on its risks was two dollars per hundred. Under the by-laws premiums are settled by the note of the insured, forty per cent. of which is payable in cash, to be indorsed on the note. Through an error in addition the agent footed the several items of the application as $2550, and computed the premium upon that sum. The plaintiff settled for his insurance by giving his note for $51 and paying $20.40 in cash, when he should have given his note for $55, and have paid $22 in cash. The application was dated and signed June 3, 1901, and stated that it was for insurance for the term of five years from June 3, 1901. At the time it was taken the agent agreed that the insurance would begin on that day. The application incorporated a copy of the company's by-laws, and provided that the company would be bound by no representation, agreement or promise of the agent not contained in the application itself. The plaintiff was already a member of the defendant company and the holder of a policy of insurance expiring June 13, 1901, on a part of the property described in the application, and, as a part of the transaction of June 3, this policy was surrendered and canceled. The plaintiff also held another policy of the company covering property which he had inherited from his lately deceased wife.

: The agent delivered the plaintiff's application, premium note and cash premium to the proper officer of the company, who, on June 5, 1901, stamped the application as approved. Soon afterward the agent's mistake was discovered. By direction of the secretary of the company the agent corrected, by erasure and interlineation, the amount of the insurance as computed in the application to $2750, and made the date at which the insurance should commence read June

13, instead of June 3. He then wrote up, ready for signature, a new application (which, however, stated that the insurance should run from June 3), prepared a new note for the proper amount, and sent them, together with the old note and application, to the plaintiff, enclosing with them a letter in the following terms:

"ALLIANCE COOPERATIVE INSURANCE COMPANY,
"Fire, Lightning, and Windstorms.     HOME OFFICE, TOPEKA, KAN.
      $2,750,000 at risk.
              Agency at TOPEKA, KAN., June 8, 1901.

"*Dear Bro. Corbett:* I find that your application calls for $2750 insurance on your home property. We made a mistake in adding it and fixing the premium note and cash payment. The note for $2750 ought to be $55. You signed one for $51. See enclosed application and note.

"Please sign the new note and application and return to me with $1.60 more to make up the $28, which is two-fifths of the two notes, ($15 and $55) which added together make $70, two-fifths of which was to be paid in advance. You can compare the amounts on the two places—$2750 on home place, $750 on the other one. Notes $15 and $55. You may keep the old note and application. I will send you receipt for balance on payment.

              Yours in cooperation,     E. A. SHANKLE,
                  1243 Lane street, Topeka, Kan."

"The old note was $51. You paid $20.40. The new one is $55, $22 to be paid on it, when $1.60 more is paid. The other application, note and payment are all right."

After the receipt of this letter the plaintiff made some effort to rectify the mistake, but was not wholly diligent in the matter, and no policy was issued to him. The company continued to retain the money the plaintiff had paid.

On July 10, 1901, the property described in the application was destroyed by fire. In a suit by the

insured to recover for his loss the foregoing facts were established by the evidence and some of them were found specially by the jury. The jury further found that the minds of the parties did meet upon a contract of insurance for $2750, that the plaintiff's application was accepted and approved for that amount on the day it was stamped approved, and that the plaintiff had been able and willing to pay the balance due from him, although he had not done so. The jury also returned a general verdict for plaintiff upon which judgment was entered. In this court the company criticizes the conduct of the trial court in a number of particulars.

The plaintiff attached to his petition an incorrect copy of the application. The allegations in the body of the petition were correct, however, and a document conceded to be the original application was introduced in evidence as a part of plaintiff's proof of his right to recover. When introduced the application appeared in the form it presented after it had been changed by the agent. Parol evidence was admitted to explain the appearance of the writing and to establish the transaction as it actually occurred, and the company complains that a written instrument was contradicted. Clearly such is not the case. Alterations of written instruments and clerical errors in their preparation of the character described may be shown by parol.

In establishing the facts with reference to the application as actually made it was unavoidable that oral testimony should be given concerning the agreement that the insurance should date from June 3, and it is said that the condition of the application that no representation, agreement or promise of the agent not contained therein was thereby violated. The statement in the application, however, that it was for in-

surance for the term of five years from the 3d day of June, 1901, was a sufficient embodiment of the agreement in the application to satisfy the condition.

The policies the plaintiff already held on June 3 were introduced in evidence. The one which was canceled was clearly admissible to establish the plaintiff's theory of the case. The bearing of the other policy upon the issues to be tried was very remote, if it were pertinent at all ; but the findings of fact show that the jury were not confused or misled or diverted from the main question, and, hence, the error, if any were committed, does not appear to be material.

The company requested the court to instruct the jury that in order to constitute a binding contract the minds of the parties should meet upon the terms and subject-matter of the insurance, and that such a misunderstanding as would prevent a meeting of minds would prevent the formation of a contract. The instruction was correct in law but was not given. The court, however, was not bound to instruct the jury in any particular form, and instead of instructing abstractly, as requested, it summarized the conduct of the parties from different points of view and instructed the jury as to the conclusion they should draw if they found the facts to be as the court hypothesized. The court's summary of facts involved, as a necessary conclusion, an agreement of the parties upon all essential elements of the contract, and therefore sufficiently covered the subject.

It is said that the court's instructions allowed the company to be bound by oral statements of its agents, in opposition to the plaintiff's written application. This is but a reassertion of the matter disposed of in considering the objection to the oral evidence introduced.

It is said that the instruction ignored the right the company had to reject applications. From the by-laws referred to, such a right is only inferentially reserved, but, conceding the company to have such power, it never did reject the plaintiff's application. It simply asked that its agent's mistake be corrected, and at all times treated the agent's agreement with the applicant as binding. Therefore, there was no occasion to point out to the jury what the company might have done had it desired to reject the risk.

It is said that it is a policy of insurance which makes the contract. Such is not the law. The conduct of the parties, including the retention of the plaintiff's money by the company, together with the application, was sufficient to establish a contract, in the absence of a controlling provision of the by-laws or an agreement to the contrary. (*Insurance Co. v. Stone*, 61 Kan. 48, 58 Pac. 986.) No such condition or agreement appears in the record, and the plaintiff was entitled to recover without any policy's having been issued.

It is said that the court's instructions made the company liable because it did not return the plaintiff's cash payment. Instead of this the court submitted all the facts to the jury, and made a verdict in favor of the plaintiff depend upon a finding of the entire series.

Authorities cited with respect to the effect of the plaintiff's delay in rectifying the agent's mistake are not apposite, and other criticisms upon the court's theory of the law of the case and the manner in which it was applied at the trial are invalid.

After the jury had been discharged and at the time of pronouncing judgment the court heard evidence as to what would be a reasonable fee for plaintiff's at-

torneys.  Believing the fees established by the testimony as reasonable to be too great, it reduced the amount to $150 and adjudged a recovery by the plaintiff of that sum as an attorney's fee, to be included in the costs of the case.  The company questions the right to collect attorney's fees at all, and claims that if they may be recovered the performance of services and their value should be pleaded and proved as other facts, and that the jury should fix the amount of recovery as any other item of damage. The court proceeded under section 3410, General Statutes of 1901, which provides as follows :

"The court in rendering judgment against any insurance company on any such policy of insurance shall allow the plaintiff a reasonable sum as an attorney's fee, to be recovered as a part of the costs."

The constitutionality of this statute was sustained in the case of *Assurance Co. v. Bradford*, 60 Kan. 82, 55 Pac. 335, and the view of the law there announced has since been promulgated by the supreme court of the United States in the case of *Fid. Mut. Life Assn. v. Mettler*, 185 U. S. 308, 22 Sup. Ct. 662, 46 L. Ed. 922, and in other decisions.  The doctrine of those cases is that attorney's fees may be imposed upon a delinquent company under the police power of the state as a kind of penalty incurred in the conduct of business affected with a public interest, and its correctness is no longer open to debate.  The legislature has chosen to make important distinctions in the imposition of burdens of the character mentioned in different cases.  In actions against railroads for damage by fire, attorney's fees are recovered as a part of the judgment itself and inhere in the general cause of action for damages.  (Gen. Stat. 1901, § 5924; *Railway Co. v. Ludlum*, 63 Kan. 719, 66 Pac. 1045.)  In other

statutes the fees allowed for the plaintiff's attorney are identified with the damages for which the action is primarily brought. In such cases the punitive character of the award is quite conspicuous, and it should be determined as any other item of the plaintiff's claim.

In suits against insurance companies, however, the legislature has indicated that the allowance is to be made as an indemnity for an outlay occasioned by the company's fault, and recovery is limited to a reimbursement of the successful party for the necessary expenses incurred in the prosecution of his claim. The award, therefore, falls strictly within the category of costs, is taxed as such, and the court is not bound by the testimony of witnesses in fixing the amount to be allowed. (11 Cyc. 24, 106.) The question is not, therefore, properly for the jury.

The record is free from material error, and the judgment of the district court is affirmed.

All the Justices concurring.