[Civil No. 1573.   Filed June 15, 1918.]

[173 Pac. 1052.]

## GERMANIA FIRE INSURANCE COMPANY OF NEW YORK, a Corporation, Appellant, v. BARBARA TANTON BALLY, Appellee.

1. INSURANCE—FIRE INSURANCE—COMMUNITY PROPERTY.—Where wife had legal title to property, an insurance company cannot assert that she was not the "sole and unconditional owner of the property" merely because the property was bought with community funds.

2. INSURANCE—FIRE INSURANCE—MORTGAGEE.—Under mortgagee clause in fire insurance policy providing that mortgagee shall not be affected by any act or neglect of the mortgagor or owner, the mortgagee is justified in assuming that the insurance company has satisfied itself that the policy is valid, and that the insurance contract has followed the title to the property, and has been properly assigned previous to the insertion of such mortgagee clause.

[As to rights of a mortgagee under an insurance on the mortgaged property, see note in 54 Am. Dec. 693.]

3. INSURANCE — FIRE INSURANCE — PROOF OF LOSS — MORTGAGEE. — A mortgagee under a fire policy is not required to furnish proof of loss, and failure by owner to do so does not affect his interest.

4. INSURANCE—FIRE INSURANCE—MORTGAGEES.—Under mortgagee clause in a fire policy, providing that mortgagee is not affected by any act or neglect of mortgagor or owner, the mortgagee need not prorate, where owner without his knowledge or consent obtains additional insurance, notwithstanding that the mortgagee clause contains a provision providing that the loss shall be prorated where additional insurance is taken out.

5. CONTRACTS — CONSTRUCTION.—The intention of contracting parties must prevail if ascertainable.

6. INSURANCE POLICY—CONSTRUCTION.—Any doubtful terms in an in-
surance policy susceptible of more than one meaning are always con-
strued most favorably to insured.

7. CONSTITUTIONAL LAW — INSURANCE — DAMAGES — IMPAIRING OBLIGA-
TION OF CONTRACT.—Civil Code of 1913, paragraph 3441, providing
that insurance company shall be liable for damages and attorney's
fees where they fail to pay for losses within the time provided in
the policy, when applied to pre-existing policies, does not impair the
obligation thereof in violation of Const. U. S. art. 1, § 10, and Const.
Ariz., art. 2, § 25.

8. INSURANCE — ATTORNEY'S FEES — STATUTES. — Civil Code of 1913,
paragraph 3441, imposes damages and attorney's fees upon an in-
surance company that does not pay a loss within the time provided
in the policy, whether or not such failure is due to bad faith.

APPEAL from a judgment of the Superior Court of the
county of Maricopa. F. H. Lyman, Judge. Affirmed.

Mr. M. T. Phelps and Mr. Ray A. Hall, for Appellant.

Mr. J. L. Gust, for Appellee.

ROSS, J.—The appellee, Barbara Tanton Bally, brought
this action to recover as first mortgagee on a standard mort-
gage clause in her favor attached to what is known as a New
York standard form of fire insurance policy issued by appel-
lant to Nettie Gilmore. Appellee recovered judgment for the
full amount of the policy and $200 attorneys' fees and costs,
from which judgment and order overruling motion for a new
trial the appellant prosecutes this appeal, and assigns many
errors. It first complains that the findings of fact are not
supported by the evidence. We have carefully looked into
the evidence and also the findings of fact as made by the
court, and, sifting and selecting from both, have come to the
conclusion that the material and salient facts are as fol-
lows:

The appellant insurance company, in June, 1912, issued
to Nettie Gilmore a fire policy on her dwelling for $3,000.
October 12th, Nettie Gilmore deeded the premises to one E. D.
McDonald who, on the same day, deeded to C. D. Messner.
October 19, 1912, Messner mortgaged the premises to appellee
for $3,000. October 23, 1912, Gilmore assigned, with the con-
sent of appellant, the policy to Messner, and on October 25,
1912, appellant attached to the policy a standard mortgage

clause, by which it agreed to pay loss, if any, to appellee. In January, 1914, Messner deeded to Olive M. Quartier, and at the same time assigned the policy to her, with the written consent of appellant. Quartier took out two other policies with other insurance companies, aggregating $3,000, to secure a second mortgage on the dwelling in favor of Messner for $1,795. These last policies were taken out without the knowledge or consent of either the appellant or appellee.

Quartier deeded to N. W. Cooper. This transaction, we think, unquestionably took place before the fire, although the trial court's finding is that it cannot be told from the evidence whether it was before or after the fire. The dwelling was damaged by fire October 15, 1914. The court's finding is that the loss was $3,600, and this finding, having support in the evidence, we will treat as correct.

Appellee, Barbara Tanton Bally, has never resided in Arizona. The loan to Messner by her was negotiated and attended to by her agent, Vernon C. Cook, a citizen of Phoenix, and as soon as he learned of the fire loss he, as her agent, undertook to protect her interests, and to that end sought to have proof of loss made and filed with appellant within 60 days after the fire.

Quartier was not a resident of Arizona, and was not present in the state at any of the times mentioned herein. Appellee's agent, Cook, believing at the time that Quartier was the owner of the premises, obtained from her a power of attorney, authorizing him to act in the matter of collecting the insurance. When he presented himself to the agent and adjuster of appellant, armed with a power of attorney from Quartier, he was advised by the adjuster that the power of attorney was lacking in both form and substance, and that no dealings could be had with him. This was in November, a month, more or less, from the date of the fire. Cook then endeavored to get another power of attorney that would satisfy the adjuster and entitle him to be recognized in the matter of settling the insurance. This power of attorney he received 2 or 3 days before the expiration of the 60 days allowed in which to file proof of loss, but he was unable to locate or find the adjuster until after the 60 days, and when he did see the adjuster was informed by him that it was too late; that no liability existed because no claim of loss had been filed within 60 days. Notwithstanding, Cook, in the name of Quartier, did make out

and give the appellant's agent in Phoenix claim of this loss—
this about February 15, 1915—for $5,800. No formal written
claim of loss was made by Cooper, and none was made by
appellee in her own name. However, the Quartier proof of
loss was made by appellee's agent, Cook, for and on behalf
of appellee and in her interest and for the purpose of saving
her rights. The day following the fire, the adjuster and a
member of the firm of Kay & Co., who wrote the policy,
visited the building, and saw the character and extent of the
damages, and shortly thereafter the adjuster caused an ap-
praisal of the loss to be made by a builder and contractor.
After the expiration of the 60 days provided in the policy
for the making and presenting to the insurance company of
the claim of loss, the appellant refused to admit or discuss its
liability to the appellee, or anyone else. The standard mort-
gage clause is as follows:

"Loss or damage, if any, under this policy shall be pay-
able to . . . as . . . mortgagee (or trustee), as interest may
appear; and this insurance, as to the interest of the mortgagee
(or trustee) only herein, shall not be invalidated by any act
or neglect of the mortgagor or owner of the within described
property, nor by any foreclosure or other proceedings or
notice of sale relating to the property nor by any change in
the title or ownership of the property, nor by the occupation
of the premises for purposes more hazardous than are per-
mitted by this policy; provided, that in case the mortgagor or
the owner shall neglect to pay any premium due under this
policy the mortgagee (or trustee) shall, on demand, pay the
same. Provided, also, that the mortgagee (or trustee) shall
notify this company of any change of ownership or occupancy
or increase of hazard which shall come to the knowledge of
said mortgagee (or trustee), and, unless permitted by this
policy it shall be noted thereon, and the mortgagee (or trus-
tee) shall, on demand, pay the premium for such increased
hazard for the term of the use thereof; otherwise this policy
shall be null and void. This company reserves the right to
cancel this policy at any time as provided by its terms, but
in such case this policy shall continue in force for the benefit
only of the mortgagee (or trustee) for ten days after notice
to the mortgagee (or trustee) of such cancellation and shall
then cease, and this company shall have the right, on like
notice, to cancel this agreement. In case of any other insur-

ance upon the within described property, this company shall not be liable under this policy for a greater portion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee, or otherwise.''

From these facts, and some others which we shall state as we go along, the appellant raises several points of law, every one of which, it is claimed, is fatal to the appellee's demand. In the first place, it is said that Nettie Gilmore, in whose favor the insurance policy was originally issued, was not, as she had represented to the company, the sole and unconditional owner of the property insured. The basis for this contention grows out of this state of facts: That Nettie Gilmore was a married woman, and the property, being paid for out of community funds, remained the common property of the spouses, notwithstanding title was in her name. But Nettie Gilmore testified that, while the property was obtained by exchanging common property therefor, it was deeded to her free from any claim of her husband and as a gift. We know of no rule of law preventing such a transaction being effective as between the husband and wife, and we certainly do not feel inclined to indulge in any technical reasoning in order to relieve the insurance company from liability. Nettie Gilmore, without any gift, was already the owner of one-half of the property. *La Tourette* v. *La Tourette*, 15 Ariz. 200, Ann. Cas. 1915B, 70, 137 Pac. 426. Against her direct testimony that the whole of the property was hers, we are asked to presume that it was community simply because it was, in part, paid for by the husband. We opine that if the husband had paid the full consideration out of his individual funds and caused the deed to be made to his wife in gift, whatever creditors or others might say, it would afford an insurer no ground of complaint. He could not, in such circumstances, with any semblance of truth or law, assert that the wife was not the sole and unconditional owner of the property.

It is also said that the insurance contract has not followed the title to the property; that a hiatus was created when the property was deeded to McDonald and no assignment of the insurance made to McDonald; that when Nettie Gilmore assigned the insurance policy to Messner, she had no interest whatever in the insured property, having parted with her title

some days before.  On the same day the property was deeded to McDonald by Nettie Gilmore he deeded it to Messner.  The McDonald transaction is not explained in the evidence.  The parties to the transaction may have conceived that the short space of time in which McDonald held the title was so insignificant as not to be taken into consideration in the matter of the assignment of the insurance policy, or it may have been that McDonald was only a "go-between" or a figurehead in the deal between Gilmore and Messner.  It is not claimed that this neglect or lapse was material or, if known to the insurance company or its agents, would have caused the assignment to Messner to be rejected.

But, aside from these reasons, the insurance clause attached to the policy in terms provides that the policy shall not be invalidated as to the mortgagee's interest by reason of any act or neglect of the mortgagor or owner, and, according to the majority of the authorities, this affords protection against previous acts as well as subsequent acts of the insured.  As is well known, many insurance policies are issued, primarily, to protect mortgagees.  In fact, it is made a condition of the mortgage, as in this case, that the insurance shall be carried by the owner of the property to protect the interests of the mortgagee.  This exaction by the mortgagee is well known to the insurance companies, and they are only too glad to take the risk.  The insurer issues the policy to the mortgagor.  It is a contract between the mortgagor and the insurance company.  The mortgagee is not interested in the contract in its inception, and only becomes interested after its execution, when the mortgage clause is attached to the policy for his protection.  We think the mortgagee, when a policy is presented to him with a standard mortgage clause attached thereto in his favor, is justified in assuming that the insurance company has satisfied itself that the policy is valid and free from impeachment for any conduct or act of the assured at its inception or prior to the attachment of the mortgage clause.  The authorities are not agreed on this proposition, but we think the better reason is with those that hold the rights of the mortgagee are unaffected by any act or neglect of the insured as well before the attachment of the mortgage clause as afterward.  Both views of the law are stated in the following authorities: 14 R. C. L. 1037, § 215; Richards on Insurance, p. 354; *Brecht* v. *Law Union and Crown Insurance Com-*

*pany*, 160 Fed. 399, 87 C. C. A. 351, 18 L. R. A. (N. S.) 197, and case note; *Bacot* v. *Phoenix Insurance Company*, 96 Miss. 223, Ann. Cas. 1912B, 262, and case notes, 25 L. R. A. (N. S.) 1226, 50 South. 729; *Reed* v. *Firemen's Insurance Co.*, 81 N. J. Law, 523, 35 L. R. A. (N. S.) 343, 80 Atl. 462; *Smith* v. *Union Insurance Co.*, 25 R. I. 260, 105 Am. St. Rep. 882, 55 Atl. 715; Ostrander on Fire Insurance, p. 502, § 210, says: °

"When a policy has been assigned with the consent of the company, a new and independent contract has arisen between the company and the assignee, and this contract will be subject to no forfeitures by reason of any acts or omissions of the person originally insured. It is wholly immaterial whether the company had or had not knowledge of such forfeitures when consenting to the assignment."

The reason given for applying this rule of construction to the agreement between the mortgagee and the insurer is that their arrangement is in all essentials an independent and separate contract by which the mortgagee is impliedly or expressly relieved from doing the things ordinarily required of the mortgagor, and likewise exempted from the penalties for neglect or omission, the burdens and forfeitures to which he may be subjected being set forth in his contract as contained in the mortgage clause.

It is next objected that appellee should not recover because she failed to make proof of loss, and because the proof of loss by the insured, Quartier, being made more than 60 days after the fire, was not available to the appellee. Under the terms of the policy, the obligation to make proof of loss devolves upon the insured, and not upon the mortgagee. Some of the decisions hold that a failure by the insured to make the proof within the time limit specified will work a forfeiture of the policy as to the insured, whereas others hold that this time limit is not of the essence of the policy, and no forfeiture will be allowed if the insured make proof of his loss within a reasonable time after the fire. Vance on Insurance, p. 502; *Kenton Insurance Company* v. *Downs*, 90 Ky. 236, 13 S. W. 882. Since the mortgagee does not contract to furnish proof of loss, certainly the reasoning in the first line of cases should not apply to him. Ordinarily he is not any more familiar with the property insured than the insurance company, and in case of fire is as little likely to know of it, or its cause.

The particulars called for in the statement of loss are peculiarly within the knowledge of the insured, and by the terms of the policy it is made his personal duty to take care of it. Whatever effect the neglect or omission of the insured, in this regard, may have upon his rights, it should not be a bar to a recovery by the mortgagee. Perhaps it is generally allowed that some one should make the proof of loss; and, if the insured fails to do so, then the mortgagee may make it, or if the insured makes the proof after the time limit specified, even though, as to him, it is too late, it may be taken advantage of by the mortgagee. 14 R. C. L. 1325, § 500; 4 Cooley's Briefs, Law of Insurance, 3352–3374; *Union Inst., etc.,* v. *Phoenix Insurance Company,* 196 Mass. 230, 13 Ann. Cas. 433, 14 L. R. A. (N. S.) 459, 81 N. E. 994. The agent of the mortgagee made the proof of loss here in the name and, ostensibly, for the benefit of Quartier. This proof was lodged with the appellant some four months after the fire or 60 days beyond the limit named in the policy. As a matter of fact, Quartier, at the time of the fire, as also the proof of loss, had alienated the premises, and had no interest in the policy of insurance, although it stood in her name. At the time of the fire and proof of loss she had forfeited her rights in the policy, and the only person left within its protection was the mortgagee. The mortgagee was the only one who had an enforceable right or claim against the appellant, and in her name the proof of loss properly should have been made. It was, as found by the court, in fact and in truth, made by appellee's agent for the benefit of appellee and in aid of her claim. We will therefore treat it as though it had been made in appellee's name and solely for her use, and in entire disregard of the insured. If we should take the view that it was incumbent upon the mortgagee to make proof of loss (the insured having failed to do so) before she could maintain an action upon the policy, we believe appellee has fully met that condition. However, we think the better view to be that it is not necessary for the mortgagee to furnish proof of loss under a policy with the standard form of mortgage clause attached. The mortgage clause does not require him to furnish proof of loss; neither does the policy, and when the two are read and construed together, no such duty is discovered. *Reed* v. *Firemen's Insurance Company,* 81 N. J. Law, 523, 35 L. R. A. (N. S.) 343, 80 Atl. 462; 2 Cooley's Briefs, Law of Insurance,

p. 1228; *Glens Falls Ins. Co.* v. *Porter,* 44 Fla. 568, 33 South. 473.

The most perplexing and difficult question is the one growing out of the provision in the mortgage clause with reference to prorating the loss when there is other insurance on the property covered by the mortgage,—other insurance not of the mortgagee's interest in the property, but of the interest of others therein. Prominently and loudly it is proclaimed in the first sentence in the contract:

"This insurance, as to the interest of the mortgagee only herein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property."

As we have seen in other parts of this opinion, the acts or negligence of the mortgagor or owner that will not affect or impair the mortgagee's indemnity are those occurring before the mortgagee's rights accrue as well as those occurring subsequently, up to and even after the loss. It is evident that a loss of insurance by the mortgagor or owner because of some violation of its terms, was not intended to affect or impair the mortgagee's insurance. Whatever may happen to other insurance upon the property, so long as the mortgagee pays the premium when the insured neglects to do so, or pays for additional hazard, or notifies the insurer of any change of ownership, occupancy or increase of hazard, if these come to his knowledge, the mortgagee's indemnity is safe. These seem to be the only affirmative duties placed upon the mortgagee, all the other duties being personal to the mortgagor or owner and so recognized by the insurer, at least until a question of liability arises. If, however, the sentence in the mortgage clause concerning contribution among insurers be held to mean, as contended by appellant, that the mortgagee's share of the loss is diminished by any other or additional insurance in the proportion that his insurance bears to the whole insurance upon the property, then the statement at the head of the contract that the mortgagee's interest "shall not be invalidated by any act or neglect of the mortgagor or owner" is not true. If this contention be conceded, there is no limit of invalidation of the mortgagee's interest to which the mortgagor or owner may not go. His whims or his needs may be said to be the only limits. To say the mortgagee would knowingly consent in advance to such a provision in his contract would be to charge him with a carelessness and stupidity not

common to those who lend money upon "gilt-edge security." It is unbelievable that the ordinary lender of money would accept security that might at any time be destroyed or rendered valueless by the mortgagor or owner, without his consent or knowledge, and yet that is what the appellant contends was done in this case.

It is said the proportion of the loss the appellee should recover is thirty-sixtieths only, for the reason that of the total insurance on the property, $6,000, $3,000 was in favor of mortgagee, Bally, and $3,000 in favor of Messner, junior mortgagee. This Messner interest in the property was a separate and distinct interest from the interest of the appellee, the senior mortgagee. The Messner insurance was obtained at a later date to indemnify his interest in the property. It was not upon the interest of the senior mortgagee nor for her indemnity, nor was it with her knowledge or consent that it was taken out. All the subsequent insurance for Messner was the act of the mortgagor or owner.

It is the contention of appellee that the contract, when properly construed, does not require her to prorate the loss with other insurance, unless it be insurance upon her interest in the insured property for her benefit, of prior insurance, or insurance placed thereon with her consent. This position finds support in the well-considered case of *Eddy* v. *L. A. Corporation,* 143 N. Y. 311, 25 L. R. A. 686, 38 N. E. 307, wherein the court, speaking through Mr. Justice PECKHAM, said:

"It is clear that the only object of the mortgagee is to obtain a security, upon which he can rely, and this object is, of course, also plain and clear to the insurer. Both parties proceed to enter into a contract with that one end in view. In order to make it plain beyond question the statement is made that no act or neglect of the owner with regard to the property shall invalidate the insurance of the mortgagee. When, in the face of such an agreement, entered into for the purpose stated, there is also placed in the instrument a provision as to the proportionate payment of a loss, we think the true meaning to be extracted from the whole instrument is that the insurance which shall diminish or impair the right of the mortgagee to recover for his loss is one which shall have been issued upon his interest in the property, or when he shall have consented to the other insurance upon the owner's in-

terest. This may not, perhaps, give full effect to the strict language of the apportionment clause, but if full effect be given to that clause, and it should be held to call for the subsequent reduction of the liability of the insurers in such a case as this, then full effect is denied to the important and material, if not the controlling, clause in the contract, which provides that the insurance of the mortgagee shall not be injuriously 'impaired or affected' by the act or neglect of the owner. As used in these mortgagee clauses, this is the meaning of the word 'invalidate.' " *Hastings* v. *Westchester Fire Ins. Co.*, supra, 73 N. Y., at page 149.

The remarkable thing is that, although this provision has been in use in the New York standard form of policy at least since October 9, 1894, when the Eddy decision was rendered, we have been cited to only three cases construing it, and, with considerable industry, we have been unable to find others. On October 23, 1894, just 14 days after the Eddy decision, the United States Circuit Court for the Eighth District, in *Hartford Fire Insurance Company* v. *Williams*, 63 Fed. 925, 11 C. C. A. 503, passed upon the identical question, taking a diametrically opposite view. The reasoning of the Williams case, is adopted and approved by the Kentucky court in *Sun Insurance Office* v. *Varble*, 103 Ky. 758, 41 L. R. A. 792, 46 S. W. 486. The Eddy case is cited with approval by the Massachusetts court in *Hardy* v. *Lancashire Insurance Company*, 166 Mass. 210, 55 Am. St. Rep. 395, 33 L. R. A. 241, 44 N. E. 209.

If we were inclined to decide the question upon the weight of authority, how could we say which way the scale tipped? Two courts of high repute say the provision means one thing, and two other courts of equal dignity and learning say it means another.

At the present time no insurance policy may be written under the laws of Arizona, except on the New York standard form (section 3440, Civil Code), but in 1912, when the policy in question was issued, there was no legal requirement that any particular form of policy be used. The appellant, a New York corporation, however, without legal compulsion, did use a form of policy the courts of its state, nearly a quarter of a century before, had declared protected the mortgagee from a diminution of his policy because of other insurance, and it is not unreasonable, as we see it, to assume the company, in

doing so, took into consideration the interpretation given this provision by the courts of New York, and proffered it to the mortgagee with that understanding of its terms and conditions. The Eddy case was *stare decisis* of the question in New York, and it is not to be thought appellant would seek or desire a different construction for other states in which it does business, and thus have a policy meaning one thing in New York and another thing outside of New York. The more rational view is to assume that appellant did not wish a contract of insurance other than the adjudicated standard form, or else it would have employed different language to express its agreement, since it was free to do so at the time this policy was issued. Over and over it has been decided that the intention of contracting parties, if ascertainable, must prevail. This rule is fundamental and controlling. However, another rule especially apropos to insurance policies is that when the language used to express intent is susceptible of more than one meaning, it should be given that meaning most favorable to the insured. "Any doubtful terms are always construed in favor of the insured." *Gazzam* v. *German Union Fire Ins. Co.*, 155 N. C. 330, Ann. Cas. 1912C, 362, 71 S. E. 434.

We confess that it is not clear to us what is meant by the insertion of the two apparently contradictory provisions in the mortgage clause we have been discussing. We think the view of the New York court is entirely reasonable, and, besides, it has the merit of justice and common sense on its side, and we, therefore, adopt it.

The appellee was allowed an attorney's fee of $200, and this, it is contended, was error. Subsequent to the dates of the policy and the mortgage clause, in May, 1913, section 3441, Civil Code, went into effect. In this section, among other things, it is provided:

"In all cases where a loss occurs and the fire insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, fifteen per cent damages on the amount of such loss, together with all reasonable attorney's fees for the prosecution and collection of such loss."

It was by virtue of this authority that the court assessed an attorney's fee. It is contended the law, when applied to a pre-existing contract, impairs the obligation thereof, in

violation of article 1, § 10, Constitution of the United States, and article 2, § 25, Constitution of Arizona. It has been decided several times that laws of the import of section 3441, *supra,* when applied to contracts entered into at a date subsequent to their enactment, did not deny the equal protection or the due process clauses as contained in the Fourteenth Amendment of the federal Constitution. *Fraternal Mystic Circle* v. *Snyder,* 227 U. S. 497, 57 L. Ed. 611, 33 Sup. Ct. Rep. 292. The statute, when applied to contracts antedating its enactment, as was done in this case, is clearly retroactive, but that, in itself, does not make it bad. It must, in addition to being retroactive, change the nature and legal effect of the contract before it can be said to impair the contract. The law considered in the Snyder case, *supra,* authorized the assessment of an additional 25 per cent when it was made to appear that the insurance company's refusal to pay had inflicted additional expense, loss, and injury, and that such refusal was not made in good faith. This, as applied to pre-existing contracts, was held not to impair them. It was said:

"The statute is aimed, not at the rights secured by the contract, but at the dishonest methods employed to defeat them. The additional liability is attached to bad faith alone. . . . Neither the contract, nor the existing law which entered into it, contemplated contests promoted in bad faith or justified the infliction of loss by such means. The state was entitled at all times to take proper measures to prevent the perversion of its legal machinery, and there is no denial or burdening, in any proper sense, of the existing remedies applicable to the contract by the demand that they be availed of *bona fide.*"

Our statute does not limit the right to recover damages and attorney's fees to refusals to pay made in bad faith. It applies to all cases, whether the resistance be honest or dishonest, upon sufficient reason or without reason. The damages and attorney's fees are allowed "as a mere consequence of success in the suit." Mr. Justice HUGHES, who wrote the opinion in the Snyder case, distinguished it from the case we have when he said:

"Nor does the statute permit a recovery of expenses or added damages as a mere consequence of success in the suit. The question whether the state may so provide as to prior contracts is not before us, and we express no opinion upon it."

The question which the court, in the Snyder case, refused or declined to decide is squarely presented to us for decision. It is evident we cannot justify the imposition of damages or attorney's fees as a punishment for bad faith in refusing payment, for our law does not place the right upon that ground. The right to impose these burdens upon an insurance company that refuses payment of loss for good reason is just as absolute as if it refused payment for no reason whatever. If this may be done, it is because the insurance company is engaged in a business of such general and public concern as to permit the police power of the state to be invoked in aid of the rights and duties growing out of the relation of insured and insurer. This has been directly recognized as a state function in liability insurance, in life insurance as affecting our army and navy, and in marine insurance. Thus the state has actually taken hold of the insurance question, and, in some measure and for some purposes, assumed the duty of its administration. Indeed, when laws allowing damages or attorney's fees against insurance companies and railroad companies have been attacked as denying equal protection of the law, the courts have justified such laws under the police power. In *Alliance Co-operative Insurance Company* v. *Corbett*, 69 Kan. 564, 77 Pac. 108, the court, after citing cases, said:

"The doctrine of those cases is that attorney's fees may be imposed upon a delinquent company under the police power of the state as a kind of penalty incurred in the conduct of business affected with a public interest, and its correctness is no longer open to debate."

All contracts are entered into with the understanding that the reserve power of the state to pass laws for the general welfare may be invoked at any time, and therefore, if the Legislature, in the proper exercise of that power, is convinced that the public good demands that an insurance company unsuccessfully resisting payment of losses should be penalized in damages or attorney's fees, we see no constitutional objection to their doing so. The highest court of one state has, without discussion and as a matter of course, given retroactive effect to a statute authorizing the assessment of an attorney's fee against insurance companies that unsuccessfully resist payment of loss. *American Fire Insurance Company* v. *Landfare*, 56 Neb. 482, 76 N. W. 1068; *Hanover Fire Insurance Company* v. *Gustin*, 40 Neb. 828, 59 N. W. 375.

We have come to the conclusion that the judgment of the lower court should be affirmed; and it is accordingly so ordered.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.