SPRING GARDEN INS. CO. et al. v. AMUSEMENT SYNDICATE CO. et al†

(Circuit Court of Appeals, Eighth Circuit. February 14, 1910.)

No. 3,116.

1. APPEAL AND ERROR (§ 5*)—MODE OF REVIEW—APPEAL AND WRIT OF ERROR.

The fact that a bill in equity filed in a federal court does not state a cause of action in equity does not constitute the action one at law for the purpose of determining the manner of review, nor does the fact that the relief granted by the decree was such as might have been given by a judgment at law: but where a demurrer was overruled, and the cause retained and heard as one in equity, although erroneously, the decree is reviewable by appeal, and not on writ of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 8–21; Dec. Dig. § 5.*]

2. APPEAL AND ERROR (§ 1017*)—REVIEW—FINDINGS OF MASTER—REFERENCE BY CONSENT.

A reference by consent of parties of an entire case for the determination of all the issues entitles the findings of the master to the same presumption of correctness as those of an independent tribunal, and they are reviewable only for manifest error in the consideration given to the evidence or in the application of the law.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3998, 3999; Dec. Dig. § 1017.*]

3. INSURANCE (§ 553*)—PROOFS OF LOSS—EFFECT OF ERRONEOUS STATEMENTS AS TO AMOUNT.

A sworn statement of an insured as to the amount of a loss, although found to be excessive, does not constitute false swearing or misrepresentation which will avoid the policy, where it was made in good faith, and there was room for an honest difference of opinion as to whether the loss was total or partial.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1362–1366; Dec. Dig. § 553.*]

4. INSURANCE (§ 575*)—ADJUSTMENT OF LOSS—FAILURE OF APPRAISAL—EFFECT.

Under a provision in insurance policies that in case of disagreement as to the amount of a loss each party shall appoint an appraiser, and the two shall select an umpire and appraise the loss, and that no action should be brought on the policies until such provision should have been complied with, the failure of the arbitration through the inability of the appraisers to agree on an umpire, without fraud on the part of either party, leaves the insured with the right to bring actions on the policies.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1435; Dec. Dig. § 575.*]

5. INSURANCE (§ 675*) — ACTIONS ON POLICIES — ATTORNEY'S FEES — KANSAS STATUTE.

The Kansas statute, providing that on recovery on an insurance policy the court shall allow the plaintiff a reasonable sum as attorney's fees, to be recovered as part of the costs, applies to all cases under policies insuring improvements on real property, without reference to whether the loss was total or partial.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1805, 1806; Dec. Dig. § 675.*]

6. INSURANCE (§ 608*)—ACTIONS ON POLICIES—SUIT IN EQUITY TO ENJOIN—POWERS OF COURT ON ACCOUNTING.

Where insurance companies joined in a suit in equity against an insured to restrain the prosecution of actions at law on policies covering

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied April 27, 1910.

the same property on the ground that an apportionment of the loss was necessary, and prayed for an accounting in case the policies were held valid, the court had power to enter judgments against them on such accounting.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 608.*]

.7. INSURANCE (§ 675*)—PERMANENT INJUNCTION—COSTS.

Where insurance companies against which an insured had brought actions at law, although not entitled to such relief, obtained an injunction from a court of equity restraining the prosecution of such actions and a determination of their liability in the court of equity, such court, on the entry of decrees against them, properly charged them with the costs in the actions at law.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 675.*]

Riner, District Judge, dissenting in part.

Appeal from the Circuit Court of the United States for the District of Kansas.

Suit in equity by the Spring Garden Insurance Company and others against the Amusement Syndicate Company and others. Decrees for defendants Amusement Syndicate Company and the Bank of Topeka against complainants and their codefendants, and the latter appeal. Affirmed. .

The following are the memoranda of decision of Pollock, District Judge, on exceptions to report of special master:

The facts, as found in the record, which give rise to this suit, may be briefly summarized as follows:

In the month of September, 1906, defendant the Amusement Syndicate Company (hereinafter called the "Amusement Company") was the contract purchaser of a certain opera house and business property located in the city of Topeka, and furniture and fixtures therein, subject to claim for unpaid purchase money held by defendant the Bank of Topeka (hereinafter called the "Bank"). This real and personal property was covered by policies of insurance issued and delivered to the Amusement Company by insurance companies, and in amounts, as follows: The American Fire Insurance Company, of Philadelphia, Pa., $2,500; Commercial Union Assurance Company (Limited), of London, Eng., $2,000; the Western Assurance Company, Toronto, Canada, $5,000; Milwaukee Mechanics' Insurance Company, Milwaukee, Wis., $1,500; Westchester Fire Insurance Company, of New York City, $2,500; the Spring Garden Insurance Company, Philadelphia, Pa., $3,000; the Columbia Fire Insurance Company, Omaha, Neb., $2,500; the Prussian National Insurance Company, of Stettin, Germany, $1,500; Security Insurance Company, New Haven, Conn., $1,000; New Hampshire Fire Insurance, of Manchester, N. H., $1,500; the Agricultural Insurance Company, of Watertown, N. Y., $2,500. "Each of said policies provided that the loss, if any, should be payable to the Bank as its interest might appear, and each policy further provided that: "The company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by any expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property." Each policy also makes the usual provision found in stock policies for appraisal by arbitrators in case of disagreement as to any loss occurring under the policy.

On the morning of September 27, 1906, a fire occurred in the property, damaging both the building and furniture to a very large extent. The fire was occasioned by the ignition of natural gas, which was escaping from a leaking pipe in the building. After loss occurred, and proofs thereof made to the companies issuing the policies, and on December 18, 1906, the Westchester Fire Insurance Company paid the full amount of its policies, aggregating

$2,500. Thereafter the remaining policies not having been paid, the Amusement Company and the Bank jointly brought actions at law on all of the policies in the appropriate state court of this state, and such actions as were removable into this court were by the appropriate proceedings removed herein. After issue joined in such law actions this suit was brought by complainants, the Spring Garden Insurance Company and the Columbia Fire Insurance Company against the Amusement Company, the Bank, and also against all other insurance companies having outstanding unpaid policies covering the property.

In the bill of complaint it is charged the policies of insurance, each and all, were obtained by misrepresentations and fraud on the part of the representative of the Amusement Company; that the representative of the Amusement Company willfully swore falsely in making the proofs of loss required by the terms of the policies to be made; that an explosion of natural gas preceded the fire in point of time, which damaged the property covered by the insurance to the amount of $2,500, for which damage it is claimed the insurance companies are not liable on the policies; that the insured had failed and refused to comply with the requirements of the policies providing for an appraisal of the damage sustained on a disagreement arising as to the amount of the loss; and, further, that as each policy provides, in case of loss thereunder, the maker of the policy shall be liable only in such proportion as the damage sustained bears to the full amount of insurance carried on the property, only a court of equity can estimate the damage sustained and apportion the loss among the companies. Wherefore it was prayed the policies be canceled, the actions at law, both in this court and in the state court, be stayed, and, in the event the policies be found valid and enforceable, the damage sustained by the fire alone be estimated and apportioned in accordance with the terms of the several contracts.

To the bringing and maintaining of this suit in equity defendants the Amusement Company and the Bank interposed a demurrer for want of equity, but did not urge such objection on the court, but, on the contrary, expressed a willingness that the suit in equity should proceed to a full determination of the rights of the parties, and the actions at law be stayed. Therefore the right to bring and maintain this suit or the cross-bills filed herein is not raised at this time, but is waived by the parties.

Defendants the Amusement Company and the Bank answered the bill, and also filed a cross-bill, praying an enforcement of the policies according to their terms. The defendant insurance companies filed answers admitting the charges made in the bill, and also filed cross-bills raising the same contentions with the assured made by complainants in the bill. Thereafter, on issues joined and on stipulation of parties filed, a special master was appointed. The order of his appointment reads as follows: "To hear the testimony offered by the parties herein as hereinafter provided, and to report the same, together with his findings of fact and recommendations respecting the decree or decrees to be entered herein," etc. The proofs were taken by the master, who heard arguments of solicitors thereon, and who reported the facts found by him and his recommendations as to the decree which should be entered in the suit.

From the facts as found by the master there was neither misrepresentation nor fraud practiced by the assured in obtaining the policies. It is further found there was no willful false swearing in making the proofs of loss by the assured. Again, it is found the provisions of the policies requiring an appraisement by arbitrators of the damages sustained by reason of the fire was entered upon, but abandoned by mutual consent of the parties; that the explosion of the gas and fire occurred simultaneously, was one and the same, and therefore there should be no deduction from the loss sustained for damages by explosion; that the aggregate amount of insurance carried at the time of the fire was $25,500, of this amount $20,100 on the real estate and $5,400 on the personal property. The value of the property was found by the master to be $50,000. Damage done to the real property, $17,250; to the personal property, $4,741.08. It was therefore recommended by the master, as the aggregate amount of loss sustained was found to be $21,991.08 and the aggregate amount of insurance carried $25,500, that a decree enter proportioning the amounts to be paid by the insurance companies in accordance with the

terms of the policies; that the costs of suit be taxed against the insurance companies and paid in like manner, including the sum of $3,500 to solicitors, as counsel fees, under the statutes of this state; further, that the law actions brought by the Amusement Company and the Bank shall be dismissed, and costs therein taxed against the same parties.

To this report certain exceptions have been taken, briefly stated as follows: (1) That the master should have found a portion of the damage accruing to the insured was occasioned by reason of the explosion, and not from fire, and such damage should have been estimated by the master in at least the sum of $2,500 averred in the bill, and this amount should have been deducted from the aggregate amount of loss found; (2) that the master should have found from the proofs the assured failed and refused to comply with the provisions of the policies requiring an appraisal of damage sustained by arbitrators, and therefore neither the actions at law commenced by the assured nor this suit can be maintained on the policies; (3) the master should have found the representative of the Amusement Company in making the proofs of loss willfully swore falsely therein as to the value of the property damaged, and therefore no recovery can be had on the policies under the provisions thereof; (4) that no allowance in this case for solicitor's fees may be made under the statute of this state, because the loss was not total, but partial only; (5) the complainants and cross-complainant insurance companies should not be taxed with the cost of the actions at law brought by the assured on the policies on the dismissal of such actions.

To the findings of fact made by the master that the policies were not obtained by fraud or misrepresentation, and as to the amount of the loss sustained by the assured from fire, or the manner of its apportionment among the insurance companies, no exceptions are taken. Therefore I shall consider the exceptions taken in the order as stated above, and in so doing, under the form of the consent order of reference above quoted, it is clear, where the facts found by the master are supported by conflicting proofs, such findings should not be disturbed by this court, following the rule announced by the Supreme Court in Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764, Crawford v. Neal, 144 U. S. 585, 12 Sup. Ct. 759, 36 L. Ed. 552, Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821, 36 L. Ed. 649, and Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289.

The sixth finding of fact made by the master reads as follows: "Between the store ceiling and the graded parquet floor was a leak of natural gas, which became ignited and exploded; the fire or flame thus igniting such gas spreading and becoming intensified simultaneously with the explosion, and rapidly increasing and developing into the fire described in finding No. 4."

It is insisted in support of exceptions filed to this finding the master should have found from the proofs an explosion caused by the ignition of escaping natural gas in the building occurred prior to the fire, which explosion damaged the property to more than the amount of $2,500 claimed in the bill. Therefore this amount should be deducted from the entire amount of damage sustained by the insured, as found by the master. On the contrary, it is contended by the assured, as the master found and stated the aggregate amount of damage sustained by the assured from fire alone, to which finding no exception has been taken, therefore such finding is conclusive on the insurance companies. Again, it is claimed the finding made by the master that the explosion and the fire occurred simultaneously is based on conflicting proofs, and is conclusive under the form of the order of submission to the master. It is further contended the proofs leave the question of the amount of damage done by the explosion itself, separate and apart from the fire, to mere speculation and conjecture, and therefore there can be no reduction.

The provision of the policies under which the reduction from the aggregate amount of loss sustained by the assured is claimed by the insurance companies is found in what is designated as a "natural gas permit" attached to the policies, which reads as follows: "Permission is hereby granted for use of natural gas for fuel and light; it being stipulated that the company will not be liable for explosion of natural gas unless fire ensues, and then for damage by fire only." There can be no doubt, I think, but that the origin of the fire in this case was the ignition of escaping natural gas, that the ignition of this

gas caused an explosion, and that this explosion did damage to the property. However, conceding the premises, does such state of facts tend to relieve the insurance companies in this case?

All contracts of parties must receive a reasonable construction and be given their natural and necessary effect. The permission granted the assured was the right to conduct into the building, and there employ for light and fuel, natural gas, a highly combustible and dangerous substance. Under the permission granted, this substance was brought into and held in the building for the purposes stated in the grant. Therefore the gas itself, and the pipes in the building through which it was conducted, was property of the assured, as much under the protection of the policies as was any other property there situate. It was known and understood by the parties to the contract the induction of this substance into the building increased the risk from fire undertaken by the insurance companies, else no permission would have been required or granted. The fact, therefore, that fire came in contact with this substance, thus igniting it, which ignition was followed by an explosion, spreading the fire to the entire property, was a known risk, in my judgment, assumed by the permission granted, notwithstanding the fact that its rapid combustion in confinement produced, as a natural result thereof, also an explosion; for, after all, fire coming in contact with property lawfully introduced into the building originated the conflagration, causing the loss and damage to the assured. While there can be no doubt, under the permission given, the insurance company would not be liable for damages done by an explosion, unless the explosion was the result of fire, yet in my judgment the reasonable construction of the permission granted is that, where the loss itself occurs through the agency insured against fire coming in contact with property lawfully in the building, as was the gas in this case, the liability of the insurer follows as necessarily as though the fire had come in contact with a stage curtain, paper, or other combustible substance in the building, although the gas, from its very nature being highly inflammable and combustible, being ignited, produced an explosion also.

However, should this construction of the "natural gas permit" attached to the policies be thought unsound, and the insurance companies should be held entitled to a reduction for loss by reason of an explosion, yet I think, as the controversy is now presented in this suit, the burden rested on the insurance companies to make definite and clear proof of the extent of the loss occasioned by the explosion itself, as contradistinguished from the fire, which, as both found by the master from the proofs and shown by the proofs, has not been done in this case. Therefore the exception is overruled and denied, and the report of the master in this respect upheld and confirmed.

The provision of the policies as to an appraisal of damages in case of disagreement is as follows: "In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; and appraisers together shall then estimate and appraise the loss, stating separately sound value and the damage, and, failing to agree, shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such loss. The parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire." "This company shall not be held to have waived any provisions or conditions of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal, or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraiser when appraisal has been required." "No suit or action on this policy for the recovery of any claims shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

The master found from the proofs (finding 11) a joint written request for an appraisal of loss was made by the Westchester Company and the Prussian Company on October 27, 1906, and a joint written request by the remainder

of the insurance companies having policies covering the property damaged on October 29, 1906, except the Columbia Company, which made no written request for such appraisement; that after some attempts were made to secure appraisers and an umpire in accordance with the provision of the policies, which proved unsuccessful, and after an investigation of the extent of the loss by the insurance companies, at their own expense, all further attempt at appraisement was abandoned by the parties. The correctness of this finding of the master, and more especially as to abandonment of appraisement by the insurance companies, forms the basis for the second exception to the report of the master. On this exception it is contended by solicitors for the assured: (1) The finding is based on conflicting proofs, and hence will not be disturbed by the court; (2) that the joint written requests for appraisement are not in accordance with the terms of the policies, and therefore amount to a waiver of these terms. And Connecticut Fire Ins. Co. v. Hamilton, 59 Fed. 258, 8 C. C. A. 114, Hamilton v. Phœnix Ins. Co., 61 Fed. 379, 9 C. C. A. 530, and Harrison v. German-American Fire Insurance Co. (C. C.) 67 Fed. 586, are cited in support of the contention made.

Whatever may be the rule as to joint demand for appraisement of damages by insurance companies, where the terms of the policies in this respect are essentially different, yet whether, in a case of this character, where the terms of the policies providing for appraisement are the same, the objection to a joint demand on the part of all or a portion of the companies having policies covering the property for an appraisement may be open to the objection made and sustained in the cases cited may well be doubted, for the rule ceases where the reason ceases. However this may be, as shown by the finding of the master in this case and the proofs as well, the assured did not refuse to enter upon the appraisement provided for in the policies on the joint demands made, nor did the assured insist on any limitation of the power of the appraisers not warranted by the terms of the policies, as was the case of Hamilton v. Liverpool, London & Globe Ins. Co., 136 U. S. 242, 10 Sup. Ct. 945, 34 L. Ed. 419, relied upon by the insurance companies. But, on the contrary, the assured acquiesced in the joint demands made for an appraisement in accordance with the terms of the policies, and designated J. C. Holland as appraiser for the assured. The insurance companies designated one Wallace Love as their appraiser. These parties proposed to each other the names of different persons to act as umpire, as provided in the policies. The persons proposed by Love to Holland were not accepted by him, nor were the persons proposed by Holland to Love accepted by him. Therefore it seems, in this case, it was the appraisers selected by the parties under the provisions of the policies who failed to agree on an umpire, and not the failure of the assured to consent to the appraisement demanded in the joint written requests therefor, that prevented an appraisement being made according to the terms of the policies. The master further finds: "Neither the insured nor the insurers corruptly or fraudulently conspired to prevent an appraisement." As no further steps were taken by either party after failure of the appraisers selected by the respective parties to agree on an umpire, the master finds the appraisement feature of the policies was waived and abandoned.

In Hamilton v. Liverpool, London & Globe Ins. Co., supra, an action at law on a policy, wherein a recovery was denied because the insured refused to consent to an appraisement of loss sustained in accordance with the terms of the policy, on proper demand made therefor, Mr. Justice Gray, delivering the opinion of the court, concludes as follows: "If the plaintiff had joined in the appointment of appraisers, and they had acted unlawfully, or had not acted at all, a different question would have been presented." In Connecticut Fire Ins. Co. v. Hamilton, supra, the Circuit Court of Appeals for the Sixth Circuit said, in speaking of the obligation to join in an appraisement provided for in the policy: "That duty would be discharged by a fair effort to obtain an appraisal, even though the insured failed in consequence of the fraud or misconduct of the other party, the impracticability of organizing the board, or the proceedings becoming abortive by reason of some radical error of the appraisers or by any other obstacle preventing him for which he was not at fault."

Tested by the rule announced in these cases, I am not inclined to the opinion the finding made by the master in this case, that the appraisal provided

for in the policies was abandoned by the parties, is not supported by the proofs, and am therefore of the opinion the exception taken must be overruled. However, if such a state of facts were shown to exist as would preclude the assured from recovery in a court of law, would the same result follow of necessity in this suit and in the condition of the record here presented? As has been seen, after issue joined in the actions at law, and after the defense of the refusal of assured to agree to an appointment of appraisers, as required by the policies, had been interposed thereto by the insurance companies, they, not being content to merely defend the law actions, brought this ancillary suit praying a cancellation of the contracts of insurance, a stay of the law actions until the determination of this suit, and, in case of failure to secure a decree annulling the policies, the alternative relief is prayed of a finding as to the damages sustained by the insured, a reduction from the total damages sustained in that amount attributable to the explosion alone, as distinguished from the fire which followed, and an apportionment according to the terms of the policy of the amount of damages by fire in such proportion as the damages found sustain to the total amount of insurance on the property. Thereafter the insurance companies not joining with complainants in the bill by their answers specifically admit the truth of the averments of the bill, and by their cross-bills affirm all the averments of the bill to be true, specially plead against the assured the charges contained in the bill, and pray the same relief as prayed in the original bill. The assured were thus compelled to come in and answer this bill and the cross-bills filed against them.

It now having been found by the master the policies were not obtained by fraud, as charged in the bill and cross-bills, but were binding obligations of the companies issuing them at the date of the loss, and this finding being admitted to be true by the insurance companies for failure to except thereto, can they now be heard to insist the provisions contained in the policies for appraisement, not having been complied with by the assured, will preclude the alternative relief prayed by them? I think not. To my mind, the steps taken in this suit by the insurance companies must be held to be a complete waiver and abandonment by them of that feature of the policies providing for an appraisement, and entitle both the insurance companies and the assured to an ascertainment in this suit of the damages sustained, and an apportionment under the terms of the policy, if otherwise the policies are valid and enforceable obligations of the insurance companies.

The third exception taken by the insurance companies lies against finding of fact No. 12 of the master. This finding sets forth in extenso the proofs of loss made and verified by L. M. Crawford as representative of the Amusement Company. In the proofs the value of the building is stated to be $51,387.38. The value of the personal property contained therein, owned by the assured, is stated to be $5,956.35, and it was therein claimed the fire had caused a total loss to the assured, in the aggregate of $57,373.73. Each of the policies provides as follows: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof, or if the interest of the assured in the property be not truly stated herein, or in case of any fraud or false swearing by the insured touching any matter relating to this insurance, or the subject thereof, whether before or after a loss."

It was the contention of the insurance companies on the hearing before the master, as it is here on this exception, that under this clause of the policies the entire contracts should be decreed void because of the false claim made by the representatives of the Amusement Company in the proofs of loss set forth, for that, as found by the master from the proofs of loss, that on the building was partial, that is to say, $17,250, and not $51,387.38, as claimed in the proofs; and on the personal property the loss was, as found by the master to be, $4,741.08 and not $5,956.35, as claimed in the proofs, and, further, that there was claimed by the proofs a total loss of a piano, which had been removed from the building and was damaged only. As has been seen, the master found the value of the building before the fire to be $50,000. The value of the personal property before the fire is not found by the master, but the loss thereon is stated at $4,741.08, and as the loss was partial only, and not total, the estimate as to the total value of the property stated by the rep-

resentative of the Amusement Company in making proofs of loss could not have exceeded that found by the master by more than the sum of $2,000 or $3.000.

In regard to the claim of false swearing by the representative of the insured in the proofs of loss, the master finds as follows in finding 12: "Said proof of loss and the statements therein contained were not intentionally made for the purpose of deceiving or defrauding the insurers; neither was any statement therein, or since, by L. M. Crawford, under oath, made intentionally for the purpose of deceiving or misleading said insurers. At the time of making said proofs of loss, Mr. Crawford was mistaken as to certain plate glass therein mentioned, and as to the total loss of a piano, which he afterwards discovered had not been destroyed, but damaged. He was and is versed in opera house construction and value, and a competent witness touching the value and loss of the property involved herein."

Conceding, as I think must be done, the claim made of total loss on the piano and glass was an innocent mistake, such as might happen in any case in regard to articles of small value as compared with the total loss, the claim of false swearing must rest almost, if not altogether, on the distinction drawn between a partial loss of the building under the policies as found by the master on full proofs and the claim of total loss as made by the representative of the insured in making proofs of loss. As shown by the proofs in the case, and as found by the master in finding No. 7, the building was rendered entirely unfit for occupancy, or for the use for which it was designed, until reconstructed, and the remaining portions were useful only for the purpose of rebuilding and reconstruction. It is very apparent, therefore, as the phrase "total loss" is construed by many of the courts, the insured could honestly and in the best of faith have asserted a claim to total loss in this case. "A total loss—that is, a loss which renders the company liable for the entire value of the property up to the limit of the insurance under the terms of a contract—does not necessarily amount to a complete destruction and obliteration of the property: but, to constitute such loss, it is sufficient that the property be so destroyed by fire as that it is deprived of the character in which it was insured and rendered useless for that purpose," etc. And the case of Liverpool, etc., Ins. Co. v. Heckman, 64 Kan. 388, 67 Pac. 879, Northwestern Mut. L. Ins. Co. v. Rochester German Ins. Co., 85 Minn. 48, 88 N. W. 265, 56 L. R. A. 108, Corbett v. Spring Garden Ins. Co., 155 N. Y. 389, 50 N. E. 282, 41 L. R. A. 318, and many other cases, are cited in support of the rule. The presumption, therefore, is that the claim to a total loss contended for by the assured in the proofs, and on the hearing of this case, was honestly made in good faith. It therefore follows the exception taken on this branch of the case must be overruled, and the finding sustained.

The next exception goes to the recommendation of the master that $3,500 be awarded as fees to solicitors for assured under the statute of this state, and that this amount be taxed as costs in this suit against the insurance companies; the claim made on this exception being that such allowance for fees to solicitors or attorneys can only be adjudged under the statutes of this state in case of total loss, when, as has been seen, the loss here was partial only, and not total. Chapter 142, Laws 1897, of this state, placed in operation what is known in insurance contracts as the "valued policy law." The title to the act reads: "An act fixing the liabilities of fire insurance companies in certain cases and repealing chapter 102, Laws 1893, and all other acts in conflict therewith. Section 1 of this act provides as follows: "Whenever any policy of insurance shall be written to insure any improvements upon real property in this state against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed without criminal fault on the part of the insured or his assigns, the amount of insurance written in such policy shall be taken conclusively to be the true value of the property insured, and the true amount of loss and measure of damages, and the payment of money as a premium for insurance shall be prima facie evidence that the party paying such insurance is the owner of the property insured: Provided, that any insurance company may set up fraud in obtaining the policy as a defense to a suit thereon." Section 2 requires an inspection and survey of the premises to be insured by an agent of the insurance company, and makes provision against forfeiture of right of insured to claim damages for loss

sustained by reason of erroneous description of property in the policy. Section 3 of the act makes its terms applicable to all policies written in the state and also to all renewals of such policies after the law became operative. Section 4. the section under which the claim is made in this case, provides as follows: "The court in rendering judgment against any insurance company on any such policy of insurance shall allow the plaintiff a reasonable sum as an attorney's fee, to be recovered as a part of the costs."

The question is, does this provision of the act apply in this suit? No decision from the Supreme Court of this state construing this section of the act is cited by solicitors; therefore I assume none such exists. No decision is cited by solicitors which in principle aids me in reaching a conclusion on the question here presented; therefore I again am warranted in assuming none such exists, or it would be on the briefs filed. That the requirement of the statute would be binding on this court sitting as a court of law rendering judgment in a case where the loss is total, and not partial, must be conceded. This, however, is not an action at law, and no judgment, as that term is usually employed, will be rendered in this suit. This court in this case may endeavor only to ascertain what is fair and just among the parties and decree accordingly. As conclusively found by the master, the loss in this case was partial; therefore the "valued policy" feature of the law provided in the first section above quoted has no application here. Indeed, the act, as shown by its title, was intended to apply to certain cases, not all; that is, the act was intended, in my judgment, to apply only in cases where the "valued policy" feature is applicable, and that is only in case of total loss under the policy. What is fair and just here is that the assured shall receive the full value of the loss sustained by reason of fire against which the insurance companies indemnified, and that each shall pay in such proportion as the amount of its policy bears to the entire amount of the loss sustained, and that solicitors shall have such fees taxed as equity provides.

The only question now remaining for decision relates to costs of this suit and costs in the actions at law commenced by the assured. From what has been seen, the actions at law were properly instituted by the assured, and might have been maintained. As a consequence of the settlement of all controversies among the parties by decree in this suit, the further prosecution of the actions at law will be unnecessary, and when final decree is entered herein, and satisfied. the law actions must be dismissed, as this disposition of the law actions is rendered necessary by the bringing of this suit, in which all the insurance companies by their pleadings unite against the assured. In my judgment, it is proper and just the costs made in such action shall be borne by the insurance companies in the proportion found by the master.

While the complainant and cross-complainant insurance companies must fail in this suit in securing a cancellation of the policies as prayed, and also in securing a reduction from the total loss sustained by the assured, as found by the master, of the amount claimed to have been occasioned by reason of the explosion, as contradistinguished from damages arising from the fire, yet a court of equity, having assumed jurisdiction of the controversies existing between the parties, will retain such jurisdiction to the end. Therefore the bill of complaint and the cross-bills filed herein should not be dismissed, but a decree should enter overruling the exceptions taken by the insurance companies to the report of the master (except with reference to the $3,500 taxed as attorney's fees under the statute), establishing the validity of the policies between the parties, stating the amount of the loss and interest thereon as found by the master. which is unexpected to, and that this amount, together with the taxable costs in the actions at law. when dismissed, and of this suit, including such solicitor's fees as are taxable in equity. be decreed to be paid in accordance with the provisions of the policies providing for a pro rata payment of the loss sustained, as recommended by the master. The recommendation of the master as to the taxation of an attorney's fee under the statutes of this state should be not followed, but be disallowed. The actions at law should be dismissed on the entrance of a final decree herein, and its satisfaction entered of record; but the actions at law stand continued and in abeyance until such time.

It is so ordered.

E. S. Quinton and Sylvester G. Williams, for appellants.

D. R. Hite (Mulvane & Gault, on the brief), for appellees.

Before ADAMS, Circuit Judge, and RINER and WM. H. MUNGER, District Judges.

WM. H. MUNGER, District Judge. The Amusement Syndicate Company obtained from ten certain insurance companies policies of insurance upon its opera house building and personal property therein. Among the various provisions in the policies was one providing that:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property or for loss by any expense of removal from premises endangered by fire than the amount hereby insured shall bear to the whole insurance, whether valid or not or by solvent or insolvent insurance covering such property."

The policies also provided that, in case of a disagreement as to the amount of loss, the insured and the insurer should each select an appraiser, the two thus chosen should first select a competent and disinterested umpire, the loss should then be estimated and appraised, and the award in writing of any two should determine the amount of the loss. Upon all of the policies, excepting the American Fire Insurance Company of Philadelphia, there was attached a slip granting permission for the use of natural gas, but providing that the company should not be liable for the explosion of natural gas unless fire ensued, then for damage by fire only. It was also provided that the policy should be void if the insured concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning the insurance, or in case of fraud or false swearing by the insured, touching or in any manner relating to the insurance or the subject thereof, whether before or after loss. On September 27, 1906, a fire occurred which partially destroyed said opera house and the personal property therein covered by the said policies of insurance. Proofs of loss under oath were duly made by Mr. Crawford, manager of the insured, in which he stated the total loss to be $57,373.73. Negotiations were had between the parties which resulted in each selecting an appraiser to appraise the damages. These appraisers were unable to agree upon the third party as an umpire and finally abandoned the effort.

Appellee then commenced a suit at law against each of said insurance companies in the proper state court of Kansas. Such of the companies whose policies exceeded the sum of $2,000 removed said actions into the United States court, and thereupon two of the companies, the Spring Garden Insurance Company and the Columbia Fire Insurance Company, filed a bill in equity, in the United States Circuit Court for the District of Kansas, against the insured and the other insurance companies, claiming that said policies were void for various reasons in the bill specified, and that the pro rata amount of loss which should be paid by the respective companies could not be ascertained in an action at law, and prayed in said bill that the policies be set aside and be decreed to be null and void—

"and that it be decreed that, if your orators and the insurance companies, defendants herein, or any of them, shall be held to be liable in any amount to the said defendants the Amusement Syndicate Company and Bank of To-

peka, that the liability be decreed to be one calling for a contribution and an apportionment on the part of such company so liable in the proportion that the insurance that it may have on the property insured bears to the total insurance on said property, whether valid or not, and that an accounting be had to ascertain what the actual cash value of the property destroyed or damaged by fire may be, and the amount, if any, for which your orators and the said insurance companies may be liable to the said the Amusement Syndicate Company and Bank of Topeaka, * * * and that a reference of this cause be made to a master, to take an accounting and ascertain in all things and how the liability, if any, of the insurers of said property shall be distributed, if so ascertained and determined by the master."

The bill also prayed that appellees be enjoined from further prosecuting the actions at law.

A demurrer was interposed to the bill, which was overruled. Answers were then filed; those by the defendant insurance companies admitting the allegations of the bill and adopting the same in their behalf in cross-bills filed by them. The appellees filed a cross-bill, setting up such facts only as would be required in an action at law to entitle them to recover upon the policies. To this cross-bill each of the defendants answered, setting up as defenses practically the same matters which were alleged and set forth in the bill. The usual replication was filed and upon stipulation of the parties the case was referred to a master to take the evidence and report his findings of fact and of law.

The parties presented their evidence to the master and he reported the same with his findings of fact and recommendations to the court. In finding of fact No. 4 it is shown that an explosion occurred just before or simultaneously with the fire. In his finding No. 9 he says the damage to the building caused by the fire was $17,250; that the damage to the personal property was $4,741.08; that the building before the fire was worth $50,000; that natural gas had been used in the building since 1881 (being prior to the issue of any of the policies); and that such fact was known to the local agents who issued the various policies when the same were issued. The master also found that neither the insured nor the insurers corruptly or fraudulently conspired to prevent an appraisement, as alleged in the bill and answers to the cross-bill. He further found that Mr. Crawford, who, under oath, made the proofs of loss, did not make any statement therein intentionally for the purpose of deceiving and defrauding the insurers or misleading them; that at the time of making the proofs Mr. Crawford was mistaken as to certain plate glass and a piano therein mentioned, which he afterwards discovered had not been destroyed, but damaged only, and mistaken as to the loss on the building, it not being total, but partial only; that he was a competent witness touching the value and loss of the property covered by the insurance policies. The master recommended that complainants' bill should not be dismissed for want of equity, but should be entertained on account of the proportionment clause in said policies, and, to avoid a multiplicity of suits and conflict of interest, that the entire loss be adjusted in one suit. The master found the policies of insurance to be valid, and found the amount of the loss due to appellees from each of said companies.

Exceptions were filed by the insurance companies to certain of the findings of the master, which were by the court overruled, and a decree

entered in favor of appellees against each of the insurance companies for their proportionate share of the loss as found by the master. From that decree this appeal has been taken. A motion has been made to dismiss the appeal, for the reason that the action, while in form an equitable one, in substance and in fact was an action at law, and hence could be reviewed only by writ of error and not by appeal. In support of the motion we are cited to Hooven, Owens & Rentschler Co. v. John Featherstone's Sons, 111 Fed. 81, 49 C. C. A. 229, and Files v. Brown, 124 Fed. 133, 59 C. C. A. 403.

Hooven, Owens & Rentschler Co. v. John Featherstone's Sons was an action to enforce a mechanic's lien for the balance of the purchase price of an engine. The case was tried in the Circuit Court as if it were an action at law. On appeal to this court it was held that, the suit being one to enforce a mechanic's lien and to compel the sale of real estate to satisfy the debt secured thereby, it was of the nature of a suit to foreclose a mortgage; that it was a suit in equity, and not an action at law, and hence that it could be reviewed in this court by appeal, and not by writ of error.

In Files v. Brown, this court, speaking by Judge Sanborn, said:

"But final decrees and orders in equity cannot be reviewed by writs of error, nor can final judgments or orders at law be successfully assailed by appeals. * * * The difference between actions at law and suits in equity is matter of substance, not of form. It inheres in the natures of the causes of action, in the principles which control, and in the remedies which follow them, and it cannot be eradicated, either by a change of form or by the abolition of forms. A legal cause of action cannot be maintained in equity, because there is an adequate remedy for it at law, and it is only where there is no such remedy that relief in equity may be successfully sought. * * * What, then, is the character of the cause of action set forth in the petition of the appellee, and what the nature of the relief he seeks? Are they legal or otherwise? * * * In effect, the petition was a bill in equity to cancel a decree for and an order confirming a sale, and to rescind the executed contract made upon the faith of it. It states no cause of action cognizable by a court of law, and it invokes no remedy which such a court has jurisdiction to administer. Bills, petitions, and proceedings to cancel or avoid judgments, orders, deeds, or other instruments which form muniments of title, and to rescind sales based upon them, fall within the exclusive jurisdiction of courts of chancery, and are only cognizable in equity in the courts of the United States. The petition for cancellation of the order, and the order of cancellation and rescission which followed it, were proceedings in equity, and they are reviewable by appeal only."

The correctness of the rules of law therein announced cannot be questioned; but they do not determine the question here. The bill filed in this case stated no legal cause of action against appellees. It attempted to state a cause of action cognizable by a court of equity. It sought equitable relief. It did not state any fact which would have entitled appellants to have maintained an independent action at law against appellees. The facts stated did not entitle appellants to equitable relief, as those facts were available to them as a defense in the several actions at law which had been brought by appellees. Mechanics' Ins. Co. v. Hoover Distilling Co. (C. C. A.) 173 Fed. 888. The fact, however, that the bill did not state facts sufficient to entitle complainants to equitable relief did not constitute the action one at law. The so-called "cross-bill" filed by appellees did not ask for any equi-

table relief, and was in substance but an answer to the bill.    Appellees were entitled to a money judgment under appellant's prayer for an accounting without a cross-bill.    Bates, Fed. Eq. Prac. vol. 1, § 378. The mere fact that the judgment was such as could have been obtained in a court of law does not of itself change the nature and character of the action.    Again, the trial court overruled a demurrer to the bill, and held that it stated an equitable cause of action.    This should be regarded as the law of the case in determining the manner of review in this court.    We think the case properly reviewable here on appeal and the motion to dismiss is overruled.

Passing to the merits of the controversy, it is to be observed that the court, pursuant to a stipulation of the parties, referred the cause to a master, to hear the testimony and report the same, with his findings of fact and recommendations respecting the decree to be entered therein.    The master heard the testimony, and made findings of fact and recommendations as to the decree pursuant to such order of reference, and the same were approved by the trial court.    As said in Kimberly v. Arms, 129 U. S. 513–524, 9 Sup. Ct. 355, 359, 32 L. Ed. 764:

"A reference by consent of parties of an entire case for the determination of all its issues, though not strictly a submission of the controversy to arbitration—a proceeding which is governed by special rules—is a submission of the controversy to a tribunal of the parties' own selection, to be governed in its conduct by the ordinary rules applicable to the administration of justice in tribunals established by law.    Its findings, like those of an independent tribunal, are to be taken as presumptively correct, subject, indeed, to be reviewed under the reservation contained in the consent and order of the court, when there has been manifest error in the consideration given to the evidence, or in the application of the law, but not otherwise."

To the same effect are Crawford v. Neal, 144 U. S. 585, 12 Sup. Ct. 759, 36 L. Ed. 552; Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821, 36 L. Ed. 649; Davis v. Schwartz, 155 U. S. 632, 15 Sup. Ct. 237, 39 L. Ed. 289; Moline Plow Co. v. Carson, 72 Fed. 387, 18 C. C. A. 606. Were this not the rule, we are satisfied that the evidence supports the findings of the master.

It is claimed that the policies were vitiated because Mr. Crawford, manager of the insured, in the proofs of loss, stated the total loss to be fifty-seven thousand and some odd dollars, whereas the total loss found by the master was approximately $22,000.    The master, however, finds in effect that the statement by Mr. Crawford was made in good faith, and not with any view to deceive the insurance company. Crawford claimed the loss to be total.    There was a conflict of evidence in this regard, and an honest difference of opinion is not false swearing, within the meaning of the policy so as to avoid its provisions. Insurance Co. v. Weide, 14 Wall. 382, 20 L. Ed. 894; U. S. v. Ninety-Nine Diamonds, 139 Fed. 961, 72 C. C. A. 9, 2 L. R. A. (N. S.) 185.

It appears that each of the parties selected an appraiser; that the appraisers were unable to agree upon an umpire.    The master has found that the failure to agree upon the umpire was not because of any fraudulent conduct on the part of either the insured or the insurers. The case, therefore, falls directly within the rule stated by this court in Western Assurance Co. v. Decker, 98 Fed. 381, 39 C. C. A. 383, and

the actions at law upon the policies were properly brought, notwithstanding the failure of the arbitration.

Complaint is also made that the master did not separate the damages caused by fire from the damages caused by the explosion. The master, in his finding, says:

"The damage to the said building caused by the fire was $17,250, and the damage caused by said fire to the personal property covered by the policies sued on by the insured was $4,741.08"

—clearly showing that he did estimate the damage by fire separate and distinct from the damage by explosion. That this was so intended by the master is apparent, for he points out the provision in the policies in this respect, also makes a finding as to the explosion, and then he is specific to say that his finding of loss is such as was caused by the fire. Hence this objection is not well taken.

It is claimed on the part of the American Fire Insurance Company that its policy was avoided because of the introduction of natural gas into the building, which increased the risk; but the master finds that the natural gas was introduced in the building prior to the issue of the policies, and hence the risk was not increased thereby.

Complaint is made of the allowance to insured of an attorney's fee. It is claimed on the part of appellant that the Kansas statute, providing for attorney's fees in cases against insurance companies, is applicable only to policies issued upon improvements upon real estate, and then only when the loss is a total one. The construction of the statute in this respect does not seem to have been directly passed upon by the Supreme Court of the state; but, in Insurance Co. v. Corbett, 69 Kan. 564, 77 Pac. 108 (the opinion modified somewhat in 105 Pac. 7), and Insurance Co. v. Washington, 71 Kan. 777, 81 Pac. 461, attorney's fees were held proper in actions upon insurance policies to recover loss upon real and personal property. It does not appear in those cases whether the loss to the real property was total or partial, and the particular question before us was not discussed.

Under a similar statute the Supreme Court of Nebraska, in Hanover Fire Ins. Co. v. Gustin, 40 Neb. 828, 839, 59 N. W. 375, considered the identical question, and held that the provision relative to attorney's fees was applicable to any policy upon real estate, even though the loss was but partial. The statute of Kansas, adopted in 1893, was identical in its language with the statute of Nebraska. The Nebraska decision referred to, however, was not rendered until after the adoption of the statute by the state of Kansas; and hence it cannot be said that the Legislature of Kansas, in adopting the Nebraska statute, adopted the construction subsequently placed thereon by the Supreme Court of Nebraska.

The proper interpretation of the statute may best be had by reviewing the legislation of the state in respect to this subject-matter. In 1893 the Legislature of the state of Kansas passed an act, the title of which was "An act defining the liability of fire insurance companies in certain cases." Chapter 102, Laws Kan. 1893. In 1897 the Legislature repealed said act, and adopted a new one, under the following title: "An act fixing the liabilities of fire insurance companies in cer-

tain cases, and repealing chapter 102 of the Session Laws of 1893 and all other acts in conflict herewith." Chapter 142, Laws Kan. 1897. The provisions of the two acts were as follows, the words within brackets being in the act of 1893 and omitted from the act of 1897, while the words in italics were not in the act of 1893, but were new matter embodied in the act of 1897:

"Section 1. Whenever any policy of insurance shall be written to insure any *improvements upon* real property in this state against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assigns, the amount of insurance written in such policy shall be taken conclusively to be the true value of the property insured, and the true amount of loss and measure of damages, *and the payment of money as a premium for insurance shall be prima facie evidence that the party paying such insurance is the owner of the property insured:* Provided, that any insurance company may set up fraud in obtaining the policy as a defense to a suit thereon.

"Sec. 2. *It shall be the duty of every person, corporation, association, partnership, company or individual issuing any policy insuring real property of any description against loss by fire or any of the risks usually insured against in their insurance policies, by itself, or its agents, to make careful examination of the premises insured, and to place in such policy a full, complete and correct description of the property or premises insured thereby; and no failure to properly and fully describe such property or premises, nor any erroneous statement in the description of such property or premises shall be a defense in any action to collect for loss thereon or thereunder when such description shall be sufficient to enable a person of ordinary intelligence to find and fully identify the property or premises upon which said insurance was written, and upon which premiums have been paid, and this notwithstanding any provisions in said insurance policy contained.*

"Sec. 3. This act shall apply to all policies of insurance hereafter [made or] written [upon real property] in this state, and also to the renewals which shall hereafter be made of all policies [heretofore] written in this state, and the contracts made by such policies and renewals shall be construed to be contracts made under the laws of this state.

"Sec. 4. The court [upon] *in* rendering judgment against [an] *any* insurance company [upon] *on* any such policy of insurance shall allow the plaintiff a reasonable sum as an attorney's fee to be [taxed] *recovered* as a part of the costs.

"Sec. 5. *Original chapter 102, of the Session Laws of 1893, and all acts and parts of acts in conflict herewith are hereby repealed.*

"Sec. 6. This act shall take effect and be in force from and after its publication in the [official state paper] *statute book.*"

The act of 1893 contained four sections; their provisions being embraced in sections 1, 3, 4, and 6, of the act of 1897. The act of 1893 related to the liability of insurance companies in cases only where the loss was total. The act of 1897 modified in some respects the provisions of the act of 1893, and in section 2 introduced a new subject-matter, imposing additional duties upon insurance companies, thus clearly indicating the intention of the Legislature that the act should not be limited to cases in which the loss was total. Section 2 of the act, as above quoted, it will be seen, is not limited in terms to cases in which the loss should be total and we can perceive of no sound reason why it should be so limited. The section treats upon a subject-matter not contained in the act of 1893. By section 2 companies issuing policies of insurance upon real property are required to make a preliminary survey of the premises and to describe the same fully in the policy. The section prescribes the effect which failure in that

respect shall produce. There could be no good reason for legislation providing that a misdescription of the premises in the policy should not be a defense to a party who sustained a total loss and leave it available as a full defense in an action brought by one whose loss was 99 per cent. of the total value, and we cannot think such was the intention of the Legislature in the enactment of 1897.

Section 3 of the act of 1897 in effect modifies or amends section 2 of the act of 1893 by striking out the words "real property." So that the act, instead of applying, as formerly, to policies of insurance written upon real property only, is made to read that the act should apply to all policies of insurance thereafter written. The change in this respect is significant, and, if the section be construed according to its literal reading, it shows the intention of the Legislature to be that the next section, providing for the allowance of attorney's fees in actions upon such policies of insurance, should apply by such modification to actions upon policies of insurance issued upon personal as well as real property. Whether it should be so construed we need not and do not here determine. We are, however, clearly of the opinion that section 1 of the act of 1897 fixes the liability of insurance companies in case of total loss under policies issued insuring improvements upon real property; that section 2 imposes a duty upon insurance companies as to all policies thereafter written upon real property and fixes a liability though the premises insured be inaccurately described, and this without reference to whether the loss be total or partial; that the provision relative to attorney's fees applies at least to all policies which are governed by sections 1 and 2 of the act. As the policies in these cases were written upon improvements upon real estate, and the major portion of the loss being such improvements, we think the attorney's fees were properly allowed. The amount of the attorney's fees not being questioned, the objection going to any allowance, we are not called upon to consider the reasonableness of the sum allowed as applied to the loss upon the building insured.

Appellants further urge that no judgment should have been rendered against the respective insurance companies for their proportionate share of the loss; that, when appellants failed to establish the equities of their bill in other respects, the entire case should have been dismissed. One of the grounds, however, upon which appellants invoked the equitable jurisdiction of the court was that, as the policies each contained the provision that each company should only be liable for the proportion of any loss which the amount of its insurance bore to the whole insurance, such provision rendered an equitable accounting proper, and complainants in their bill prayed that, if the policies should be found valid, such accounting should be had. Under these circumstances, the insurance companies will not be permitted to question the decree in this regard.

Lastly, it is said that the court erred in decreeing that the insurance companies should pay the costs in the actions at law brought by insured and that such actions at law should then be dismissed. The insurance companies invoked the aid of a court of equity and in courts of equity the payment of costs by the respective parties is a proper matter of equitable distribution. The actions at law were properly brought.

The insurance companies were not entitled to invoke the aid of a court of equity to stay their progress. Having done so, however, and obtained the benefit in a court of equity of the proper contribution to be paid by each company under their prayer for an accounting, thus rendering further proceedings in the actions at law unnecessary, it was but proper that the costs in those actions should be assessed against the insurance companies. Had the actions at law proceeded to judgment, the costs would have followed the judgment, and the insurance companies will not be permitted to evade the costs by simply appealing to a court of equity.

The decree of the Circuit Court is affirmed.

RINER, District Judge (concurring). Ten actions at law were brought by the appellees in the state court against ten insurance companies, of which nine are appellants in this court, to recover upon certain policies of fire insurance issued to the Amusement Syndicate Company upon its opera house and property in the city of Topeka, Kan. Five of the cases were removed to the Circuit Court for the District of Kansas and there docketed on the law side of the court as actions at law. Afterwards the Spring Garden Insurance Company and one of the other companies, a defendant in one of the actions commenced in the state court and removed to the federal court, filed a bill in equity in the Circuit Court in which an injunction was prayed against the appellees to restrain them from proceeding in the five actions removed to the Circuit Court and the five actions still pending in the state court.

In this bill the complainants set out the issuance of the ten policies sued on, that the policies were similar in terms and provisions, except as to dates and amounts, and that each of the policies contained a provision by which each insurer should be liable for such a proportion of the amount of any loss as the amount of its policy bore to the total amount of the insurance at the time of the loss. It was further alleged that by reason of such clause a common interest existed among the insurers relative to the amount of the loss, and that, to avoid a multiplicity of suits, equity had jurisdiction to determine the amount of such loss, and to apportion the same among the several insurers. The other insurance companies were made parties defendant to the bill. It was also alleged in the bill that the policies were obtained by fraudulent concealment on the part of the appellees relative to the value of the property which was the subject of the insurance, and prayed that at the final hearing it might be decreed that all of the contracts of insurance were void because of the frauds practiced upon the insurers by the appellees.

To this bill of complaint the appellees filed a demurrer, which was overruled. The insurance companies made defendants in the bill answered in such form as to admit the allegations of the bill, and join in the prayer for relief. A temporary injunction was granted by the Circuit Court, restraining the appellees from prosecuting the ten actions at law commenced by them against the several insurance companies. Thereupon the appellees filed what is denominated in the record a "cross-bill," in which they set out the issuance of the ten insurance policies, the occurrence of the fire, the destruction of the property in-

sured, and substantially the same allegations relative to the liability of the several companies as appear in the petitions in the law actions commenced in the state court. The prayer of this so-called cross-bill was that the appellees recover from the insurance companies the full amount of the policies upon which actions at law had been brought, together with an attorney's fee, as provided by the laws of Kansas.

To this cross-bill each of the insurance companies answered, alleging, by way of defense, breaches of the policies as set out in the original bill of complaint. To these answers replications were filed, and, the issues having been thus joined, by consent of all the parties the issues of fact were referred to a master for his findings and recommendations for judgment. The master's findings of fact were confirmed by the court, and a decree or judgment was rendered in favor of the appellees for the amount of the loss as found by the master. The Western Assurance Company, one of the defendants in the cross-bill, paid the amount which the judgment provided it should pay, and the other nine insurance companies joined in this appeal.

It will be seen from the foregoing statement that the issues tried arose upon the so-called cross-bill, which is in legal effect a petition at law, the answers of the insurance companies thereto, and the replications to the answers. A motion was filed by the appellees to dismiss the appeal on the ground that the cause of action tried in the Circuit Court was at law, and not in equity, and therefore that this court had no jurisdiction to review a judgment on such cause of action, except by a writ of error.

That an action such as this is an action at law, without any equitable features whatever, was decided by this court in Mechanics' Insurance Company et al. v. C. A. Hoover Distilling Company et al. (C. C. A.) 173 Fed. 888. It is to be noticed that the case was tried as an equity cause by the consent of all parties, and therefore neither party can be heard in this court to object to the method of trial. Hooven v. Featherstone, 111 Fed. 81, 49 C. C. A. 229. Judge Sanborn, in delivering the opinion of the court in the case just cited, said:

"It is earnestly argued that appellant, by consenting to try its case below at law, has waived its right to a review by appeal. Its waiver, however, does not extend to that length. One who consents to the hearing in equity of a legal cause of action, or to the trial of an equitable cause of action at law, is thereby estopped from successfully objecting for the first time in an appellate court to the method of trial which he has adopted. But this is the extent of the estoppel against him. He does not waive his right to a review of the judgment or decree of the trial court by the only method which can be effectual to obtain such a review; that is to say, by writ of error if the cause of action was legal, and by appeal if it was equitable."

In Files v. Brown, 124 Fed. 133, 59 C. C. A. 403, this court again, speaking through Judge Sanborn, said:

"The appellant has taken an appeal, and has also sued out a writ of error to reverse the same order. This is a permissible practice where counsel are in doubt which course to pursue, and the appellate court will judge the proceedings below in accordance with the rules of that method of review applicable to the nature of the case presented. * * * But final decrees and orders in equity cannot be reviewed by writs of error, nor can final judgments or orders at law be successfully assailed by appeal. * * * Hence it becomes necessary before entering upon the merits of the questions at issue to

determine whether this is a proceeding at law or in equity, and whether it may be reviewed by a writ of error or by appeal. The difference between actions at law and suits in equity is matter of substance, not of form. It inheres in the nature of the causes of action, in the principles which control, and in the remedies which follow them, and it cannot be eradicated, either by a change of form, or by the abolition of forms. A legal cause of action cannot be maintained in equity, because there is an adequate remedy for it at law, and it is only where there is no such remedy that relief in equity may be successfully sought. Equitable causes of action are not available at law, because they invoke the judgment and appeal to the conscience of the chancellor, and the free exercise of that judgment and conscience is prohibited in actions at law by the rule which entitles every party to a trial of all the issues of fact by a jury." Hooven v. Featherstone, 111 Fed. 81, 49 C. C. A. 229; McFadden v. Milling Company. 97 Fed. 670, 38 C. C. A. 354; Hurt v. Hollingsworth. 100 U. S. 100, 25 L. Ed. 569; Highland Boy Gold Mining Co. v. Strickley, 116 Fed. 852, 54 C. C. A. 186.

No writ of error was sued out in this case, and to hold that the court has jurisdiction is to overrule, it seems to me, the former decisions of this court above referred to, and for that reason I am unable to assent to the views expressed by a majority of the court. I think the motion to dismiss for want of jurisdiction should have been sustained. The original bill, as I view it, stated no cause of action, either at law or in equity, and, as is well suggested by counsel in their brief, "is nothing but an application addressed to the Circuit Court to try ten cases at law according to the procedure and rules applicable to suits in equity." This operates as an estoppel in so far as the method of trial is concerned; but, as suggested by Judge Sanborn in Hooven v. Featherstone, this is the extent of the estoppel against them.

But if, as the majority hold, the court has jurisdiction, the judgment or decree in the Circuit Court was for the right parties, and, being affirmed by a majority of the court, I concur in the result on the merits.